STATE of Utah, Plaintiff and Respondent,

v.

Chris Alfred BERTUL, Defendant and Appellant.

No. 17153.

Supreme Court of Utah.

May 3, 1983.

G. Fred Metos, Ronald J. Yengich, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant appeals from a burglary conviction. He raises two points: (1) whether the trial court erred in excluding from evidence a document called a police "booking sheet," which was proffered by the defendant to support his asserted defense of intoxication; and (2) whether the trial court erred in refusing to instruct on the crime of criminal trespass as a lesser-included offense of the crime of burglary.

The defendant was convicted of burglarizing the Westminster Pharmacy in Salt Lake County in the early morning hours of October 14, 1979. He was seen leaving the pharmacy by a witness who identified him at trial. When arrested, the defendant was in possession of drugs taken from the pharmacy.

At trial the defendant relied on a defense of voluntary intoxication. He did not dispute his participation in the crime. Rather, he contended that he had consumed an inordinate amount of alcoholic beverages the night of the crime, was subject to blackouts

when drinking, and had blacked out the night of the burglary and remembered nothing of it. The testimony of the officer who made the arrest, Officer English, was that the defendant had obviously been drinking but did not appear intoxicated. During cross examination of Officer English, the defendant proffered what appeared to be a copy of the "booking sheet," which apparently was filled out at the Salt Lake County jail when the defendant was booked at 6:30 a.m. the day of the burglary. The burglary was committed approximately three hours prior to the arrest. Defendant's apparent purpose in offering the booking sheet was to substantiate his claim of intoxication. The trial court ruled that the document was inadmissible hearsay.

In making out a booking sheet, the booking officer writes in a number indicating the arrestee's degree of intoxication. The number is based on the conclusion of the "searching officer" who verbally communicates his conclusion to the booking officer. A "1" indicates that the searching officer concluded that he believed that the arrestee, at the time of booking, was so intoxicated that he could not be booked. A "2" indicates obvious intoxication, and a "3" indicates that the arrested person had been drinking. The booking sheet offered by defendant was marked with the number "2."

■ The booking sheet and the code number on it were clearly hearsay; they were out-of-court statements offered to prove the truth of the information contained on the sheet. Thus, they were inadmissible unless they fell within one of the exceptions to the hearsay rule. Defendant contends that the booking sheet falls within the business record exception and within the exception for past recollection recorded. Because we conclude that the booking sheet

should have been admitted as a "business record," we do not address the exception to the hearsay rule for past recollection recorded.

■ Rule 63(13) of the Utah Rules of Evidence provides for the admissibility of business entries "and the like." [1] We have construed that rule and predecessor rules governing the business record exception broadly. *In Joseph v. W.H. Groves Latter Day Saints Hospital,* 7 Utah 2d 39, 318 P.2d 330 (1957), we laid down the rule that an opinion in a hospital record, in that case a doctor's diagnosis, was admissible as a business record exception.[2] *See also In re Richards' Estate,* 5 Utah 2d 106, 297 P.2d 542 (1956). We have also held that the essential test in establishing the applicability of the exception is the reliability of the document, not the nature of the enterprise from which the records are taken. A business record may be admitted irrespective of the type of organization from which it emanates. "It is the type of evidence which will be excluded by the hearsay rule, not the type of organization (i.e., private or public) that is important." *Barney v. Cox,* Utah, 588 P.2d 696, 698 (1978). In *Barney* we expressly held that the business records exception applies to governmental entities.

In the instant case, the custodian of the police records in question did not testify. Initially, the trial court excluded the evidence because there was no evidence either of its authenticity or its reliability. The trial court ruled that the absence of any evidence showing that the proffered booking sheet was a genuine police department record precluded admission of the evidence. The trial court also excluded the document because the conclusion as to defendant's intoxication upon which the code number was based was supplied by the officer who

---

1. Rule 63(13) provides in full text:
*Business Entries and the Like.* Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and cir-

cumstances of their preparation were such as to indicate their trustworthiness.

2. It is also significant that in *Joseph* the doctor making the entry was not an employee of the hospital. The requisite trustworthiness arose from the doctor's duty to render proper service to the patient.

searched the defendant at the police station and not by the booking officer who filled out the form.

Since the searching officer who supplied the information acted in the regular course of his duties in reporting to the booking officer, we are not convinced that that was sufficient to require exclusion of the document. *See Joseph v. W.H. Groves Latter Day Saints Hospital, supra; United States v. Smith,* 521 F.2d 957 (D.C.Cir.1975). After a recess, defendant's counsel proffered the testimony of the custodian of the police department's booking documents to overcome the objection based on foundation. The proffer was refused, however, because the trial court ruled that even with an adequate foundation, the evidence was not sufficiently trustworthy.

On its face, Rule 63(13) appears to provide for the admission of all hearsay entries contained in a business record as long as the source of the information and the method and circumstances of the preparation of the record are such as to indicate its trustworthiness.

 For evidence to be admissible as a business record, a proper foundation must be laid to establish the necessary indicia of reliability. That foundation should generally include the following: (1) the record must be made in the regular course of the business or entity which keeps the records; (2) the record must have been made at the time of, or in close proximity to, the occurrence of the act, condition or event recorded; (3) the evidence must support a conclusion that after recordation the document was kept under circumstances that would preserve its integrity; and (4) the sources of the information from which the entry was made and the circumstances of the preparation of the document were such as to indicate its trustworthiness. Generally, the requisite foundation can be made by the custodian of the records. *See generally Carpenter Paper Co. v. Brannock,* 14 Utah 2d 34, 376 P.2d 939 (1962). Thus, whether

police records are admissible depends on the nature of the records and the purpose for which they are offered. Police records of routine matters are admissible under Rule 63(13), such as the day a crime was reported. *United States v. Smith, supra.* Even fingerprint records of a defendant are admissible under this rule if a proper foundation is laid. *State In re Marquez,* Utah, 560 P.2d 342 (1977).

 On the other hand, police reports containing non-routine information as to which the memory, perception, or motivation of the reporter may raise a serious question of reliability, are inadmissible. Furthermore, statements by witnesses to a crime and recorded by officers are not made in the regular course of the witness' business and do not have the indicia of reliability associated with routine and regularly recorded entries upon which reliance is placed by an organization.[3] *See Gencarella v. Fyfe,* 171 F.2d 419 (1st Cir.1948); *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930). *See also United States v. Shiver,* 414 F.2d 461 (5th Cir.1959); *Standard Oil Co. of California v. Moore,* 251 F.2d 188 (9th Cir.1957); *Gordon v. Robinson,* 210 F.2d 192 (3rd Cir.1954); McCormick, *The Law of Evidence* § 308 (2d ed. 1972). Thus, the "circumstances of their preparation" are not such "as to indicate their trustworthiness," as required by Rule 63(13).

Furthermore, since police reports of the factual events and details of a criminal case are generally made for the purpose of successfully prosecuting a crime, the reasons which might otherwise provide a basis to assume reliability of such reports as business records do not exist where police reports are offered by the prosecution in a criminal proceeding. *United States v. Smith,* 521 F.2d 957 (D.C.Cir.1975). It does not necessarily follow, however, that such records may not be admissible when proffered by a defendant.

---

**3.** They may, however, be admissible if the witness' statement to the police officer meets the requirements of some other exception to the

hearsay rule. *See* Annot., 69 A.L.R.2d 1148, § 5 (1960).

The present state of the pertinent law began with *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), in which the Supreme Court held that an accident report prepared by a since-deceased railroad engineer and offered by the railroad in its defense in a grade-crossing collision case did not qualify as a business record since the report was prepared in contemplation of litigation. As the court of appeals had stated in that case, the report was "dripping with motivations to misrepresent." *Hoffman v. Palmer,* 129 F.2d 976, 991 (2d Cir.1942). The *Palmer* doctrine has generally been extended to exclude "business records" which were made with an eye toward litigation when offered by the party responsible for making the record. *See, e.g., Bracey v. Herringa,* 466 F.2d 702 (7th Cir.1972) (in suit by prisoner against prison guards for alleged beating, guards' reports as to prisoner's behavior were inadmissible because they were possibly "self-serving.")

A number of cases have excluded police reports under the *Palmer* doctrine when offered by the prosecution even though the police reports met the literal, specific requirements of the business records exception to the hearsay rule. Thus, in the leading case of *United States v. Ware,* 247 F.2d 698 (7th Cir.1957), the court held:

> [E]ven if memoranda such as the ones in question are regularly prepared by law enforcement officers, they lack the necessary earmarks of reliability and trustworthiness. Their source and the nature and manner of their compilation unavoidably dictate that they were inadmissible under section 1732. They are also subject to the objection that such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of the police business. *Cf. Palmer v. Hoffman, supra.*

*See also United States v. Frattinni,* 501 F.2d 1234 (2nd Cir.1974); *United States v. Brown,* 451 F.2d 1231 (5th Cir.1971); *United States v. Adams,* 385 F.2d 548 (2nd Cir. 1967); *Sanchez v. United States,* 293 F.2d 260 (8th Cir.1961); *Annot.,* 31 A.L.R.Fed. 457 (1977); *Annot.,* 77 A.L.R.3d 115 (1977).

In most cases dealing with police reports of a criminal investigation, it is apparent that the reports are made in part in contemplation of litigation. Although the reports may not be readily describable as "dripping with motivation to misrepresent," their exclusion is more fundamentally explainable on the ground that substantial rights under the confrontation clause of the United States Constitution, and especially the right of cross-examination, may be severely prejudiced when the information in the report calls into question the motivation and the accuracy of perception, recall, the manner of language usage, or the soundness of conclusions by the author of the report. *Cf. Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (the right to cross-examine is essential to a fair trial). It would be "error and ordinarily reversible error to receive an exhibit containing 'a neat condensation of the government's whole case against the defendant'" in the form of a police report for which there can be no effective cross-examination. *United States v. Parker,* 491 F.2d 529 (8th Cir.1974) (denial of rehearing; main opinion at 491 F.2d 517) (quoting *Sanchez v. United States, supra,* 293 F.2d at 269; *United States v. Ware, supra,* 247 F.2d at 700). We have long ago forsaken the practice of allowing a person to be convicted on the basis of out-of-court statements, whether written or oral, of persons not subject to cross-examination.

After a careful and scholarly analysis of many cases under the business records exception involving the admissibility of police records, *United States v. Smith,* 521 F.2d 957 (D.C.Cir.1975), synthesized the rule, to which we adhere, that police reports of crimes should ordinarily be admitted when offered by the defendant in a criminal case to support his defense. When offered by the prosecution, however, they should ordinarily be excluded, except when offered to prove simple routine matters which are based on first-hand knowledge of the maker of the report and do not involve conclusions, and when the "circumstances of

their preparation indicate their trustworthiness." Rule 63(13). *Cf. Koninklijke Luchtvaart Maatschappij N.V. KLM v. Tuller,* 292 F.2d 775 (D.C.Cir.1961) (business reports admissible where adverse to employer's interest); *Pekelis v. Transcontinental & Western Air, Inc.,* 187 F.2d 122 (2nd Cir.1951) (same); *Korte v. New York, N.H. & H.R. Co.,* 191 F.2d 86 (2nd Cir.1951) (business reports prepared by doctors admissible). This rule finds support in the similar application given to a similar exception to the hearsay rule, i.e., official governmental reports. Rule 63(15) provides an exception for official reports and findings of public officers. This exception may, of course, overlap with the business record exception. As with business records, investigatory reports of government officials containing opinions not based on first-hand knowledge are not admissible under that exception. *E.g., Emmet v. American Insurance Co.,* 265 A.2d 602 (D.C.Ct.App.1970) (fire official's report); *Dale v. Trent,* 146 Ind.App. 412, 256 N.E.2d 402 (1970) (policeman's report); *Middlesex Supply, Inc. v. Martin & Sons, Inc.,* 354 Mass. 373, 237 N.E.2d 692 (1968) (fire chief's report); *Hall v. Boykin,* 207 So.2d 645 (Miss.1968) (highway patrolman's accident report).

Since the booking sheet was offered by the defendant, we conclude that the trial court erred in excluding the booking sheet in the instant case even though it contained what might be considered a conclusion.

Our next inquiry must then be whether that error was prejudicial or harmless in nature. The defense raised by the defendant was that he was so intoxicated that he was not criminally liable for the act of burglary. To maintain a successful defense of that sort, the defendant had to meet the requirements established by U.C.A., 1953, § 76–2–306, which provides:

> Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense; however, if recklessness or criminal negligence establishes an element of an offense and the actor is unaware of

the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense.

The defense of intoxication was not intended to justify a criminal act by someone whose behavior controls were lessened or somewhat diminished by voluntary intoxication. It is not a defense to a crime that "one does things one might not otherwise have done" because of the influence of alcohol. *State v. Sisneros,* Utah, 631 P.2d 856, 859 (1981).

Voluntary intoxication of a sufficient degree may destroy a person's ability to form the necessary specific intent to commit a particular crime requiring a specific intent. *State v. Wood,* Utah, 648 P.2d 71 (1982). But there is nothing on the facts of this case which would justify a conclusion that because the defendant may have been intoxicated at the time of booking, as the code number "2" indicates, such evidence is probative that defendant was so overcome by the influence of alcohol at the time of the crime that he was not able to form the required criminal intent to steal. Indeed, the evidence in the instant case strongly indicates that the defendant was not so mentally beclouded at the time of the commission of the crime that he simply did not know what he was doing, as he would now have this Court believe. The evidence indicated that he intentionally and deliberately broke into the pharmacy, entered, and removed the stolen drugs, including a controlled substance. There is nothing whatsoever that appears on the booking sheet that would have supported the inference that the defendant, at the time of the crime, was unaware of breaking and entering the pharmacy and of leaving with the drugs in hand. Furthermore, since the officer who made the conclusion reflected on the booking sheet was not the same officer who testified at trial that defendant had been drinking but was not intoxicated, the out-of-court statement of the "searching" officer could not have been used for impeachment as a prior inconsistent statement. In sum, we find no prejudicial error in the trial court's exclusion of the booking sheet.

Defendant also contends that the trial court erred in not giving an instruction on the lesser-included offense of criminal trespass. The facts are all but incontrovertible that defendant entered the pharmacy and in fact committed a burglary. He was caught with the goods. We do not have a case where the defendant made an unlawful entry but his intention after the entry was unclear and a matter of inference. The facts, therefore, unequivocally demonstrate a burglary, not a criminal trespass. On these facts, *State v. Hendricks,* Utah, 596 P.2d 633 (1979), controls, and an instruction on criminal trespass was not required.

Affirmed.

HALL, C.J., and OAKS and HOWE, JJ., concur.

DURHAM, J., does not participate.

TAYLOR, District Judge, sat but died before the opinion was filed.