2020 UT App 68

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRETT NICHOLAS BARNER,
Appellant.

Opinion
No. 20180534-CA
Filed April 23, 2020

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 171912692

Andrea J. Garland, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     Brett Nicholas Barner was convicted of robbery after he stole a case of beer from a 7-Eleven and hit the store clerk with his car while fleeing the parking lot. He now appeals, alleging that the district court erred by excluding a detective's testimony and report opining that video surveillance footage did not show that Barner intentionally hit the clerk. He further alleges that the district court erred in denying his motion for a directed verdict. We conclude that the district court properly excluded the detective's report and testimony under rule 701 of the Utah Rules of Evidence and, regardless, the exclusion did not harm Barner. We further conclude that the district court correctly denied Barner's motion for a directed verdict. Therefore, we affirm.

BACKGROUND[1]

¶2     On June 18, 2017, Barner entered a 7-Eleven convenience store, grabbed an 18-pack of beer, and left without paying. The 7-Eleven clerk working at the time noticed Barner leaving and ran after him. When Barner got in his car, the clerk stood in front of it. Barner then drove away and hit the clerk with his car as he exited the parking lot. Fortunately, the clerk was not injured during this encounter.

¶3     A Salt Lake City Police detective followed up at the scene after the clerk called 911. After reviewing the store's surveillance footage and interviewing the clerk, the detective drafted a report stating, "The surveillance footage does not show that the suspect intentionally hit the clerk, but the clerk is seen running up to the suspect's vehicle. No injuries were reported by the clerk." Soon thereafter, Barner was arrested and charged with aggravated robbery.

¶4     Prior to trial, the State moved to exclude the report and any testimony from the detective. The district court granted that motion. Although the court acknowledged that the report was admissible under the business records exception to the rule against hearsay, it found that the detective's statement in the report, as well as the detective's testimony as to what the surveillance video showed, was inadmissible under the lay witness requirements of rule 701 of the Utah Rules of Evidence because it would be unhelpful to the jury.[2]

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Ramirez*, 2019 UT App 196, n.2, 455 P.3d 1082 (cleaned up).

2. The court also ruled that the evidence would be inadmissible under the best evidence rule articulated in rule 1002 of the Utah

(continued…)

¶5     At trial, the clerk testified for the State. He testified that once he noticed Barner leaving the store without paying, he ran after him and saw Barner get in his car. The clerk explained that he approached the car, yelled at Barner, and made eye contact with him before Barner accelerated, grazing the clerk's legs with the car as he drove off. When defense counsel asked whether it was "possible that as opposed to trying to hit [him], [Barner was] just trying to drive off," the clerk answered, "yes." In addition to the clerk's testimony, surveillance footage of the incident was shown to the jury.

¶6     Barner moved for a directed verdict at the close of the State's case, arguing that the aggravated robbery charge should be dismissed because the State had failed to present sufficient evidence to show that Barner had knowingly or intentionally used force or fear of immediate force against the clerk. The district court denied the motion.

¶7     At the parties' request, the court instructed the jury on aggravated robbery as well as lesser included offenses. The jury ultimately acquitted Barner of the aggravated robbery charge and convicted him of the lesser included offense of robbery. Barner now appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Barner first argues that the district court abused its discretion when it excluded the detective's report and testimony as to what the surveillance video showed. "The appropriate standard of review for a district court's decision to admit or exclude evidence is abuse of discretion." *State v. Lane*, 2019 UT App 86, ¶ 14, 444 P.3d 553 (cleaned up). However, we "review

---

(…continued)
Rules of Evidence. But because we ultimately affirm on the basis of rule 701, we do not reach the court's alternative ruling.

the legal questions underlying the admissibility of evidence for correctness." *Rocky Mountain Power Inc. v. Marriott*, 2018 UT App 221, ¶ 18, 437 P.3d 653 (cleaned up).

¶9 Barner further argues that the district court erred in denying Barner's motion for a directed verdict on the aggravated robbery count.[3] "We review the [district] court's denial of a motion for directed verdict for correctness." *State v. Moody*, 2012 UT App 297, ¶ 5, 288 P.3d 1092. However, because Barner "challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential." *State v. Hawkins*, 2016 UT App 9, ¶ 32, 366 P.3d 884 (cleaned up). We will uphold the district court's denial "if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime have been proven beyond a reasonable doubt." *Id.* (cleaned up).

ANALYSIS

I. Exclusion of the Detective's Report and Testimony

¶10 Barner takes issue with the district court's exclusion of the detective's report and testimony at trial. Barner argues that the

---

3. Although Barner moved for a directed verdict only on aggravated robbery, the court necessarily considered whether the elements of robbery were satisfied when deciding the motion, including whether there was a threat of immediate force. The elements of robbery are incorporated into the crime of aggravated robbery. *See* Utah Code Ann. § 76-6-302 (LexisNexis 2017) ("A person commits aggravated robbery *if in the course of committing robbery* he: (a) uses or threatens to use a dangerous weapon . . . ; (b) causes serious bodily injury upon another; or (c) takes or attempts to take an operable motor vehicle." (emphasis added)).

detective's report was admissible under rule 803(6) of the Utah Rules of Evidence, which excepts "records of a regularly conducted activity," or business records, from the rule against hearsay. Barner relies on *State v. Bertul*, 664 P.2d 1181 (Utah 1983), in which our supreme court applied rule 803(6) in the context of police reports. The court determined that while police reports are typically inadmissible when offered as business records by the prosecution, they should "ordinarily be admitted when offered by the defendant in a criminal case to support his defense." *Id.* at 1185. Barner contends that *Bertul* controls and that the district court abused its discretion in excluding the detective's report offered by Barner to support his defense.

¶11 However, *Bertul* did not hold that all police reports offered by a criminal defendant are admissible; it held only that a defendant may rely on the business record exception under rule 803(6) to defeat a hearsay objection. *Id.* at 1183–86. The evidence is still subject to other rules of evidence governing admissibility.

¶12 Here, the district court agreed with Barner that, under *Bertul*, the detective's report fell within the business records exception to the hearsay rule. The court did not exclude the evidence as hearsay, but as impermissible opinion testimony under rule 701(b) of the Utah Rules of Evidence.

¶13 Rule 701 states that testimony by a lay witness "in the form of an opinion is limited to one that is . . . rationally based on the witness's perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Utah R. Evid. 701. The decision of whether lay testimony would be "helpful to the jury rests almost altogether in the judicial discretion of the trial judge." *In re Estate of Kesler*, 702 P.2d 86, 94 (Utah 1985) (cleaned up).

¶14 The district court ruled that the detective's opinion as to what the surveillance video showed would not be "helpful to the

trier of fact." The court's reasoning focused on the fact that the detective based his conclusion solely on viewing the same surveillance video that would be shown to the jury. The detective's report purported to describe only what the surveillance video does *not* show, stating that "[t]he surveillance footage does not show that the suspect intentionally hit the clerk." The jury could just as easily observe what the video does or does not show without the aid of the detective's testimony. Importantly, the detective did not witness the incident firsthand, did not have access to a higher resolution copy of the video, and did not have any unique insight into what the video showed. Because the jury had the same opportunity to watch the video and draw its own conclusions about what was depicted, the court acted within its discretion in concluding that the detective's opinion would not be helpful to the jury.

¶15     Moreover, Barner cannot show a reasonable probability of a different result had the evidence been admitted. "An erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful." *Jenson v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 100, 82 P.3d 1076 (cleaned up).[4] And an "error

---

4. Barner argues that the exclusion of the evidence merits reversal unless it is harmless beyond a reasonable doubt because it violated his constitutional right to present a complete defense. *See State v. McCallie*, 2016 UT App 4, ¶ 12, 369 P.3d 103 ("If we determine the trial court erred, and the error results in the deprivation of a constitutional right, we apply a higher standard of scrutiny, reversing the conviction unless we find the error harmless beyond a reasonable doubt." (cleaned up)). But not every ruling excluding evidence offered by the defense rises to the level of a constitutional violation. A "defendant's right to present relevant evidence is . . . subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). It is not enough for a defendant to show that the operative rule results in the exclusion of favorable evidence. *See State v. Thornton*, 2017 UT 9, ¶ 77, 391 P.3d 1016. Instead, "the defense

(continued…)

is harmful if, absent the error, there is a reasonable likelihood of a more favorable outcome for the defendant." *State v. Cegers*, 2019 UT App 54, ¶ 32, 440 P.3d 924 (cleaned up).

¶16     Even if the detective's opinion regarding the contents of the surveillance video could have been helpful to the jury in determining whether Barner intentionally hit the clerk, the jury was not required to find intentional conduct to convict Barner of robbery, nor was it even necessary for the jury to find that Barner hit the clerk with his car. To secure a robbery conviction, the State had to prove only that Barner "intentionally or knowingly use[d] force or fear of immediate force." Utah Code Ann. § 76-6-301(b) (LexisNexis 2017). The detective's statement that the video did "not show that the suspect intentionally hit the clerk" had no bearing on whether Barner knowingly used force or fear of force. Even if the statement had been admitted and had convinced the jury that striking the clerk was unintentional, it would not have undermined the jury's finding that Barner had knowingly used fear of immediate force by accelerating when he knew that the clerk was standing in front of his car. Therefore, the exclusion of the detective's

---

(…continued)
must demonstrate a 'weighty interest' that is 'significantly undermined' by the rule of evidence; and the rule must be shown to be 'arbitrary' or 'disproportionate to the purposes' it is designed to serve." *Id.* (quoting *Scheffer*, 523 U.S. at 308, 315). This requires, "at a minimum, proof that the evidence in question is essential to the presentation of a defense." *Id.* ¶ 78. Here, the evidence was not essential to Barner's defense that he did not intentionally strike the clerk with his car. Barner presented his theory to the jury both through the surveillance video itself and the clerk's testimony that it was possible Barner was simply trying to drive off, as opposed to trying to hit him. Because the exclusion of the evidence did not deprive Barner of a constitutional right, the higher standard of scrutiny does not apply.

opinion did not prejudice Barner because there is no reasonable probability that its admission would have resulted in a more favorable verdict.

## II. Directed Verdict

¶17 Barner next argues that the district court erred when it denied his motion for a directed verdict. A court may grant a directed verdict if "the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." Utah R. Crim. P. 17(o).

¶18 At the close of the State's case, Barner moved for a directed verdict, arguing that the State presented insufficient evidence that Barner committed aggravated robbery. Although Barner's motion addressed only the charged offense of aggravated robbery, the court necessarily considered whether the evidence was legally sufficient to prove the lesser-included offense of robbery for which Barner was ultimately convicted. *See supra* note 3. To prove robbery, the State must show that "the person intentionally or knowingly use[d] force or fear of immediate force against another in the course of committing a theft or wrongful appropriation." Utah Code Ann. § 76-6-301(b) (LexisNexis 2017).

¶19 The evidence presented to the jury was sufficient to establish that Barner "knowingly use[d] force or fear of immediate force against another in the course of committing a theft." *Id.* The clerk testified that after he saw Barner get into the car, he yelled to get Barner's attention. While the clerk was standing in front of Barner's car, the two made eye contact, establishing that Barner knew the clerk had approached his car. Nevertheless, Barner accelerated despite knowing that the clerk was in close proximity to the vehicle. This evidence was sufficient for the jury to conclude that, even if Barner did not intend to strike the clerk, he knowingly used force or fear of immediate force to intimidate the clerk and aid his escape.

Therefore, the district court did not err in denying Barner's motion for a directed verdict.

CONCLUSION

¶20    We conclude that exclusion of the detective's report and testimony was proper under rule 701, and in any event, Barner was not harmed by the ruling. Further, the court did not err in denying Barner's motion for a directed verdict. Accordingly, we affirm.

———————